THE DeMOTT HOMES AT SALEM, INC., PROSECUTOR, v. CITY OF MARGATE CITY ET AL., RESPONDENTS.

Argued December 13, 1947—Decided December 23, 1947.

For the prosecutor, *Perskie & Perskie.*

For the respondents, *Enoch A. Higbee, Jr.*

EASTWOOD, J. This matter is brought before me, sitting as a single justice, on the return of a writ of *certiorari* heretofore allowed to review a zoning ordinance, adopted by the Commissioners of Margate City, in the County of Atlantic on October 2d, 1947. The zoning ordinance in effect prior to the ordinance under review was adopted on September 18th, 1930. The effect of the ordinance of October 2d, 1947, is to restrict the erection on prosecutor's lands to one-family dwellings. Under the ordinance of September 18th, 1930, it was permissible for prosecutor, who is a vendee under a written agreement of purchase, to erect two-family dwellings on its lands. The issue is whether the governing body's action, in

amending said ordinance, was a valid exercise of power by the municipality. I am convinced that, from a considered review of all of the proofs and arguments of counsel, the action complained of does not constitute a valid exercise of power by the Board of Commissioners, and said ordinance should be set aside.

A brief recital of the facts is essential to comprehend the issue to be decided. Prosecutor's lands are the usual type of unimproved seashore ground, being practically at the same grade as adjacent lands. The lands in question are bounded on the northerly side by a body of water, commonly referred to as the "thoroughfare," which divides Absecon Island from the mainland; on the easterly side by a row of one-family dwellings, including a grocery store; on the southerly side by forty two-family dwellings now in the course of construction and a commercial property known as the "Margate warehouse;" on the westerly boundary by the Margate Water Works and Standard Engineering grounds, the latter of which has contracted with the City of Margate to erect water and sewer mains to service prosecutor's lands; on the northwesterly boundary are premises for the hire of boats; sheds, beer saloons and taprooms. The land in question is largely filled in marsh land and has little, if any, curbing or sidewalks thereon. Victor D. Tort, attorney for the prosecutor, testified that he informed the mayor of Margate City that the prosecutor planned to erect two-family dwellings on prosecutor's lands and that the mayor indicated his approval and informed Tort that a contract under date of June 24th, 1947, had been entered into for the installation of sewer and water mains for prosecutor's and other adjacent lands. Prosecutor has paid $10,000 under an agreement for the purchase of said lands. A commitment has been made to the Federal Housing Administration for a mortgage loan of $988,000 to assist in the cost of construction of sixty-one detached, duplex dwellings, staggered in arrangement and of various types of construction. In addition, prosecutor paid to the City of Margate $5,490, required for the sewer and water connections, although this was returned to prosecutor after the passage of the ordinance. Other moneys were expended by prose-

cutor in anticipation of said building construction. Mayor Tighe testified that he never communicated to his two fellow commissioners his negotiations with prosecutor and he was not aware that the construction was to be two-family dwellings. Significantly, the mayor testified that he informed prosecutor's attorney after the passage of the amending ordinance "* * * I told Mr. Tort had I advised him that such an ordinance was going to be passed it might defeat the purpose for which the ordinance had been passed." The other two city commissioners, Morris B. Trucksess and Leroy Lewis, testified that Mayor Tighe had never communicated to them his discussions with prosecutor's attorney prior to the passage of the ordinance. Incidentally, under the terms of the F. H. A. mortgage loan, approximately $30,000 must be expended by prosecutor for landscaping around the proposed development.

Prosecutor contends that the ordinance in question does not tend to promote the general good nor bear a substantial relation to the public health, morals, safety or welfare in the proper sense, and, therefore, it must be held to be invalid as an arbitrary, unreasonable and unconstitutional interference with prosecutor's property rights; and that prosecutor was deliberately lured into a false sense of security by the assurance allegedly given it by the mayor of Margate City. On the other hand, respondents contend that (1) the presumption is that the ordinance bears a reasonable relation to the powers conferred by the Zoning Act and that the burden is upon the prosecutor to overcome that presumption; (2) that Mayor Tighe never communicated to his fellow commissioners the negotiations it is alleged he had with the prosecutor's representative; that he had no authority to bind the municipality and, therefore, the financial expenditures and commitments made by the prosecutor are not a legal ground for the allowance of the writ; that (3) "the City of Margate City had ample authority to adopt the ordinance under review" by virtue of the authority vested in it under article 4, section 6, paragraph 5, of the state constitution as amended; that (4) the city commissioners "acted in good faith and what in their opinion was best to protect the good and general welfare of the entire community of Margate City by adopting

the amended ordinance in order to prevent a density of population, to lessen congestion in the streets, secure safety from fire, panic and other dangers, promote health, to prevent the overcrowding of land or buildings and avoid undue concentration of population in that locality and the respondents have not sustained the burden of proof that the ordinance was unreasonable or enacted in bad faith;" that (5) the ordinance under attack was not limited to prosecutor's lands and was intended to accomplish an "over-all" plan for the permanent betterment of Margate City.

I have reached the conclusion that the ordinance adopted on October 2d, 1947, is invalid and should be set aside, on the ground that it does not bear a reasonable relation to the powers conferred by the Zoning Act and that the restriction put upon prosecutor's lands "passes the bounds of reason and assumes the character of a merely arbitrary fiat." As stated by Mr. Justice Heher, speaking for this court in *Brandon* v. *Montclair,* 124 *N. J. L.* 135; 11 *Atl. Rep.* (*2d*) 304; *affirmed,* 125 *N. J. L.* 367; 15 *Atl. Rep.* (*2d*) 598:

"Use restrictions upon real property must find their justification in some aspect of the police power, exerted for the public welfare. Unless the particular regulation bears a substantial relation to the public health, safety, morals, comfort, convenience, or the general good and welfare in the proper sense—in this instance, to one or more of the considerations outlined in section 40:55–32 of the Revision, *supra*—it is an invasion of the constitutional right of private property. *Euclid* v. *Ambler Realty Co.,* 272 *U. S.* 365; 47 *S. Ct.* 114; 71 *L. Ed.* 303; *Nectow* v. *Cambridge,* 277 *U. S.* 183; 48 *S. Ct.* 447; 72 *L. Ed.* 842; *Mansfield & Swett, Inc.,* v. *West Orange,* 120 *N. J. L.* 145. The inquiry is whether the restraint thus put upon property 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' *Purity Extract and Tonic Co.* v. *Lynch,* 226 *U. S.* 192, 204; 33 *S. Ct.* 44; 57 *L. Ed.* 184. * * *."

In the case *sub judice,* the original zoning ordinance permitting two-family dwellings in the zone in question had been in effect for seventeen years. The character and type of construction in the immediate vicinity of prosecutor's

lands, heretofore discussed, indicates that the proposed construction would not be detrimental, but would result in a decided improvement to that area. One cannot escape the conclusion that the amending ordinance restricting prosecutor's lands to one-family dwellings was hurriedly adopted for the specific purpose of preventing prosecutor from carrying out its known plans to erect a number of two-family dwellings. As a consequence, the action of the governing body in adopting the amending ordinance, so far as it affects prosecutor, under all of the circumstances existing in this case, was arbitrary and capricious. Such action of the governing body is frowned upon by our courts. It was so held in *Brandon* v. *Montclair, supra:*

"It is not within the legislative province so to exercise the power as to preclude the use of the individual property for all purposes to which it is reasonably adapted. The statutory provision for relief against 'unnecessary hardship' ensuing from a 'literal' application of the ordinance was designed to permit reasonable use of the particular property, and thus to guard against an unwarranted interference with the fundamental right of property, *i. e.*, to secure reasonable zoning. * * * The restrictions may be so unreasonable in the given case as to be confiscatory; and, in those circumstances, the general rule must be struck down as arbitrary and oppressive."

The record, as I view it, is absolutely devoid of any proof that the public health, safety, morals, comfort, convenience or the general good and welfare in the proper sense will be affected detrimentally or injuriously to Margate City or its inhabitants. The proofs indicate that the commissioners of Margate City are fearful that the prosecutor's project will cause the city to become overpopulated in that area and increased economic burdens will fall upon the municipality to furnish essential school facilities, police and fire protection, &c., and that the taxes assessed against the prosecutor's property will not be sufficiently productive to maintain these essential services and a resulting additional burden will fall upon other taxpayers of the municipality. I am constrained to reach the conclusion that this fear of the city commissioners is the real basis that motivated them to adopt the ordinance

under attack and does not justify its enactment. Mr. Justice Bodine, in speaking for this court recently in the case of *Ridgefield Terrace Realty Co.* v. *Borough of Ridgefield,* 136 *N. J. L.* 311, stated:

"The committee felt that inasmuch as one garden apartment had already come into town that the next garden apartment would severely tax the school facilities, the sewage plant and fire protection service, and that the police force might have to be increased with a further burden on the budget.

"This seems to be specious reasoning. The building of the apartments would increase the ratables and result in greater revenue. Certainly, it is no part of zoning to prevent growth; nor is the fact that surrounding the area in question attractive single family houses have been built any reason why a change in the zoning ordinance should be made in order to preclude an efficient and economic use of the prosecutor's lands."

I am persuaded that the action of the governing body was a precipitate move to prevent prosecutor from adapting its property to its highest use, which for seventeen years prior thereto had been permissible. *Vine* v. *Zabriskie,* 122 *N. J. L.* 4.

The ordinance under attack is declared invalid to the extent that it affects prosecutor's lands, and to that extent is set aside with costs.